# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

INTERNATIONAL HAIR & BEAUTY
SYSTEMS, LLC d/b/a ORGANIC
SALON SYSTEMS,

        **Plaintiff,**

v.                                         **Case No: 8:11-cv-1883-30AEP**

SIMPLY ORGANIC, INC., GINO MARTIGNETTI,
GENE MARTIGNETTI, JON MOSTROM,
and MATTHEW PINTO,

        **Defendants.**

_____/

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court, pursuant to Federal Rule of Civil Procedure

65, on **Plaintiff's Motion for a Temporary Restraining Order and Preliminary**

**Injunction Against Defendants Matthew Pinto and Simply Organic, Inc.** (Dkt. No. 3)[1],

which was filed on August 22, 2011.[2]  Plaintiff moves for a temporary restraining order

---

[1]Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction Against Defendants Matthew Pinto and Simply Organic, Inc. (Dkt. No. 3) was referred to the undersigned by the Honorable James S. Moody, Jr.  It must be noted that any of the directives issued in this Report and Recommendation are not final unless adopted by the District Court.

[2]Also pending before the Court are Defendants' Motion to Strike Allegations in Scott Mitchell Affidavit (Dkt. No. 33), Plaintiff's Motion to Continue Hearing on their Motion for Temporary Restraining Order to Have the Court Review Plaintiff's Customer List In Camera and to Correct the Record (Dkt. No. 43), Plaintiff's Motion to Stay the Court's Ruling on their Motion for a Temporary Restraining Order until the Court Rules on Plaintiff's Motion to Continue Hearing (Dkt. No. 45), and Plaintiff's Rule 26 Motion for Expedited Discovery and to Schedule a Date for a Hearing on Preliminary Injunction (Dkt. No. 47).  As Defendants' Motion to Strike Allegations in Scott Mitchell Affidavit (Dkt. No. 33) relates to the underlying Motion for Temporary Restraining Order, the Court will address it in this Report and Recommendation, and will address the other motions by a separate order.

("TRO") and preliminary injunction against Matthew Pinto ("Pinto") and Simply Organic, Inc. ("Simply Organic"), one of Plaintiff's competitors, to enforce a covenant not to compete and non-disclosure agreement against Pinto and to prevent dissemination of its alleged trade secrets and proprietary information.[3]

The Court held a telephonic status conference on August 25, 2011, during which the Court provided Defendants with an opportunity to respond to Plaintiff's Motion within five (5) days. The Court subsequently scheduled a hearing to address the TRO and preliminary injunction on September 2, 2011, as Defendants would have filed their response by this time. However, on August 30, 2011, Defendants filed an Emergency Motion for Continuance (Dkt. No. 14), as Robert O. Saunooke, Defendants' lead counsel, was unable to adequately prepare for and attend the aforementioned hearing due to his previously-scheduled engagements with the Eastern Band of Cherokee Indians.[4] On August 31, 2011, the Court held a telephonic hearing to address Defendants' Emergency Motion, granted the relief requested, and rescheduled the hearing for September 7, 2011 (Dkt. No. 22).

At the September 7, 2011 hearing, the parties presented witness testimony to support their pleadings, and Plaintiff testified as to its desire to withdraw its Motion insofar as it relates to the ammonia-free hair color product. Thus, the Court need only address the merits of the request for preliminary injunctive relief as to Pinto's alleged restrictive covenants and confidentiality agreement and Defendants' use of the customer list at issue in this case. On September 12, 2011, the Court held a short telephonic status conference, during which the

---

[3]As an initial matter, the Court notes that, although Plaintiff requests a TRO and a preliminary injunction, only preliminary injunctive relief will be considered. The time has passed for the issuance of a TRO.

[4]Mr. Saunooke was out of the country when the August 25, 2011 conference call took place.

Court granted parties an additional forty-eight hours to reach a stipulation as to Defendants'
use of the customer list. Unfortunately, as relayed to the Court during a final status
conference on September 15, 2011, the parties were unable to reach an agreement on the
underlying issues.

## I. Factual Background

Plaintiff International Hair and Beauty Systems d/b/a Organic Salon Systems is a
Florida limited liability company, with offices in Palm Harbor, Florida, that imports, markets,
and formulates professional hair care products throughout the United States and Canada. (Dkt.
No. 3 at 2.) These products are specifically designed to minimize the toxic chemicals
commonly found in professional salon products. (Dkt. No. 3 at 2.) Plaintiff previously
employed Pinto as its Technical Director, and he was terminated for cause in or about October
2010 for alleged theft of company property.[5] (Dkt. No. 1 at ¶16.)

On August 2, 2010 and August 25, 2010, respectively, Pinto entered into an
Employee Non-Disclosure Agreement and a Proprietary Information Agreement & Invention
Assignment with Plaintiff. (Dkt. No. 5, Ex. A, B.) Both Agreements define "Confidential
Information" as follows:[6]

> "Confidential Information" means any and all information that
> is not generally known and that is proprietary to the Company or
> any of its clients, consultants, licensors, licensed dealers or
> distributors. Confidential Information includes, without
> limitation, business plans, _customer lists_, consultants, financial
> information, and trade secrets about the Company and its
> products and information or the proprietary information relating
> to designs, formulas, developmental or experimental work,

---

[5]On the contrary, Pinto contends that he was told he was being terminated by Plaintiff
because he had a lunch meeting with a competitor of Plaintiff. (Dkt. No. 32 at 1.)

[6]The Proprietary Information Agreement & Invention Assignment replaces the word
"Company" with "Organic Salon Systems." (_See_ Dkt. No. 5, Ex. A.)

> know-how, products, processes, computer programs, source codes, databases, designs, schematics, other original works of authorship, or other subject matter related to the Company's research and development, manufacturing, engineering, purchasing, finance, marketing, promotion, distribution and selling activities, whether now existing, acquired, developed or made available anytime in the future to the Company. All information which I have a reasonable basis to consider confidential or which is treated by the Company as confidential shall be presumed to be Confidential Information, whether originated by me or by others. I agree that any Confidential Information acquired by me is the property of the Company.

(Dkt. No. 5, Ex. B) (emphasis added). The Employee Non-Disclosure Agreement provides restrictions regarding the use of confidential information in the following "Confidentiality" provision:

> I agree at all times during the term of my Employment by the Company and from then on to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose, transfer, or reveal, directly or indirectly to any person or entity any Confidential Information without the prior written authorization of the Company.

(Dkt. No. 5, Ex. B.)

The Proprietary Information Agreement & Invention Assignment includes the following "Non-Solicitation" provision:

> I agree that at all times during, and for a period of two (2) years after termination of my association with or employment by Organic Salon Systems, I will not directly or indirectly, by myself or in conjunction with any person or firm, (i) divert or take away any Organic Salon Systems customer, dealer or distributor, or (ii) solicit or employ, or attempt to employ on behalf of myself or any third party, any of Organic Salon Systems's employees in any competitive business.

(Dkt. No. 5, Ex. A.) It also includes a "Non-Competitive Employment" provision:

> At all times during, and for a period of two (2) years after termination of my association with or employment by Organic Salon Systems, I will not, directly or indirectly, render services

4

> within any geographic territory for which I was responsible in any sales, advisory, consulting, development or promotional capacity, to any competitor of Organic Salon Systems, in connection with the development, manufacture, marketing, sale, leasing, servicing or promotion of any product in existence or under development which is the same as or similar to or competes with any Organic Salon Systems product, process, system, or service with which I worked during my association with Organic Salon Systems, or about which I have acquired Confidential Information, nor will I engage in any other activities that conflict with my obligations to Organic Salon Systems.

(Dkt. No. 5, Ex. A.)

In his Affidavit, Pinto provides that "[w]hile employed with Plaintiff prior to Plaintiff being purchased by Scott Mitchell, affiant had access to contact management lists including clients, customers and potential customers of Plaintiff's prior owner." (Dkt. No. 32 at 2.) Pinto's Affidavit also provides the following:

> 12. Sometime in early 2011, a former employee of Plaintiff forwarded a list of hair salons and beauty supply stores to affiant. Affiant does not know whether the former employee had access to the information even after leaving the company or whether the password and login information had ever been changed. Additionally, the former employee did not have a non-compete or other restrictive covenant agreement with Plaintiff.
>
> 13. Affiant offered the list to Simply for use in its mass marketing and e-mail campaign for its products. The list contained some salons that were utilizing products of Plaintiff. Affiant forwarded the list to an employee at Simply.

(Dkt. No. 32 at 3-4.)

At the hearing on September 7, 2011, Defendants confirmed that they did incorporate the customer list provided by Pinto into their mass advertising e-mail sent on May 22, 2011 by

Eric Beckham.[7]  As stated in Scott Mitchell's[8] Affidavit, "[i]n several circumstances, the same typos that exist in the Plaintiff's database with regards to the customer's first name were also represented in the Simply Organic SPAM sent to the same customers." (Dkt. No. 5 at 5.)  In addition, the Affidavit provides the following:

> During Pinto's employment, management added e-mail addresses of non-customers (email addresses controlled by plaintiff's management) to the Plaintiff's database of customers for reasons that included ensuring that former employees had not stolen customer database information upon their departure.
>
> 16.  The Simply Organic SPAM was received by the non-customers on the customer database that had been 'seeded' by Plaintiff's management."

(Dkt. No. 5 at 4-5.)

## II.  **Request for Relief**

Based on the foregoing facts, Plaintiff requests that the Court enjoin Pinto from violating the non-solicitation, non-compete, and non-disclosure agreements he agreed to and enjoin Simply Organic from utilizing Plaintiff's customer list in any capacity.  Plaintiff contends that "[u]nless preliminary injunctive relief is issued, Plaintiff will be irreparably injured by the improper use of its proprietary customer lists." (Dkt. No. 3 at 1-2.)

## III.  **Applicable Legal Standards**

### A.  **Standard of Review**

The decision to grant or deny a preliminary injunction is within the discretion of the district court.  *Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997).  In determining whether a preliminary injunction should issue, the district

---

[7]Whether or not the list has been utilized subsequently is disputed by the parties.

[8]Scott Mitchell is Plaintiff's Corporate Executive Officer.

court must consider whether the moving party has demonstrated (1) a substantial likelihood of success on the merits; (2) that the moving party will suffer irreparable harm unless the injunction issues; (3) the threatened harm to the movant outweighs the potential damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). Since a preliminary injunction is an extraordinary and drastic remedy, a district court should not issue a preliminary injunction unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). Further, courts in the Eleventh Circuit will not issue a preliminary injunction where the moving party fails to meet its burden of proof on each of the four factors. *See Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1022 (11th Cir.1989); *see also Salsbury Labs., Inc. v. Merieux Labs., Inc.*, 908 F.2d 706, 708 n. 2 (11th Cir.1990) (noting that the preliminary injunction was denied because the movant failed to show a threat of irreparable harm, even though it established a substantial likelihood of success on the merits).

## B. Trade Secrets

Florida law protects customer lists and information from misappropriation and conversion through injunctive relief. Florida has adopted the Uniform Trade Secrets Act, which provides for injunctive relief to prevent the actual or threatened misappropriation of a trade secret. *Lynch v. Silcox*, No. 01-8800-CIV, 2001 WL 1200656, at *4-5 (S.D. Fla. Oct. 4, 2001). Whether a particular type of information constitutes a trade secret is a question of fact. *Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683, 686 (11th Cir. 1998). Florida's Uniform Trade Secrets Act defines a trade secret as follows:

> [I]nformation, including a formula, pattern, *compilation*, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4).

In an action involving trade secrets, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy. *American Red Cross v. Palm Beach Blood Bank*, 143 F.3d 1407, 1410 (11th Cir. 1998) (applying Florida law). Information generally known or readily ascertainable cannot qualify for trade secret protection. *Id.* Accordingly, "customer lists constitute trade secrets where they are a product of great expense and effort, rather than a compilation of information available to the public." *MDT Personenel, LLC v. Camoco, LLC*, No. 8:10-cv-2545-T-33MAP, 2010 WL 5535066, at *3 (M.D. Fla. Dec. 8, 2010).

Here, Plaintiff's customer list qualifies for protection as a trade secret. First, Scott Mitchell testified in his Affidavit that "[t]he OSS customer list is a list that is not available to the general public as OSS customers mostly consist of small hair salons located across North America." (Dkt. No. 5 at 2.) Scott Mitchell also stated that the customer list "database contains, among other information, the e-mail addresses of the Plaintiff's customers." (Dkt. No. 5 at 3.) Pursuant to Paragraph 29 of his Affidavit, "Plaintiff took reasonable precautions and numerous efforts to keep their trade secrets secure, confidential, secret, and protected from the general public including, without limitation, historical use of confidentiality agreement with every person given access to such information." (Dkt. No. 5 at 8.)

Further, the testimony provided by John Fontana, Plaintiff's Director of Sales, supports Plaintiff's contention that its customer list qualifies as a trade secret. Mr. Fontana testified that each employee has a unique user name and password to access company information, such as the customer list. Although Plaintiff has mostly made the shift from physical to digital storage, Mr. Fontana stated that the hard copies of Plaintiff's customer list reside in locked boxes at an off-site location. Regarding the content of the customer lists themselves, he explained to the Court that the lists contain customers' significant contact information, such as full names, cellular phone numbers, addresses, salon name, and personal and work e-mail addresses. He stated that the lists also contain customers' order tendencies, such as how often and what they order. Generally, Mr. Fontana testified, customers contact the company to request an information packet, which begins the business relationship. However, an individual/salon is not placed on the list until an initial purchase has been made. Although he was not sure of the exact number, Mr. Fontana estimated that the acquisition cost of a new client is $690. Further, he testified that, while not all customers on the list are self-selected, Plaintiff certainly does not go through the telephone book to find potential clients. As such, his testimony makes clear to the Court that Plaintiff's customer lists are a product of "great expense and effort." *See MDT Personenel, LLC v. Camoco, LLC*, No. 8:10-cv-2545-T-33MAP, 2010 WL 5535066, at *3 (M.D. Fla. Dec. 8, 2010).

Finally, the Court reviewed the redacted customer list, which was filed on September 19, 2011 by Plaintiff (Dkt. No. 50, Ex. 1). The list includes salon names, personal contacts at the salons, telephone numbers, e-mail addresses, and notes regarding communications with customers, many of which bear the initials "MP" for Matthew Pinto. These notes include, among other things, information regarding orders and feedback from customers about

products they had purchased.  Accordingly, it is clear that the list contains information not readily ascertainable by the general public.

## C. Relevant Causes of Action Against Pinto

In Count X of Plaintiff's Complaint, Plaintiff argues that Pinto signed and was bound by Plaintiff's Proprietary Information Agreement & Invention Assignment and Employee Non-Disclosure Agreement.  As such, Plaintiff contends that Pinto violated the non-compete, non-solicitation, and confidentiality provisions of these agreements, which are outlined in the Factual Background section above.

### i) Non-Compete and Non-Solicitation Provisions

In order to state a cause of action for injunctive relief against one who violates a covenant not to compete, "the complaint must allege a contract with an appropriate clause, the defendant's intentional, direct and material breach thereof, and no adequate remedy except by injunctive relief." *Capraro v. Lanier Business Products, Inc.*, 445 So.2d 719, 720 (Fla. 4th DCA 1984) (citations and quotations omitted).  Pursuant to Florida Statutes Section 542.335(1)(b):

> The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant.  The term "legitimate business interest" includes, but is not limited to:
>
> 1.  Trade secrets, as defined in s. 688.002(4).
>
> 2.  Valuable confidential business or professional information that otherwise does not qualify as trade secrets.
>
> 3.  Substantial relationships with specific prospective or existing customers, patients, or clients.
>
> 4. Customer, patient, or client goodwill associated with:

> a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress"; or
> b. A specific geographic location; or
> c. A specific marketing or trade area.
>
> 5. Extraordinary or specialized training.
>
> Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable.

Fla. Stat. § 542.335(1)(b). An enforceable restrictive covenant is one in which the "contractually specified restraint is reasonably necessary to protect [a] legitimate business interest." *Walsh v. Paw Trucking, Inc.*, 942 So.2d 446, 448 (Fla. 2d DCA 2006). Section 542.335(1)(c) empowers the trial court enforcing a covenant to "modify the restraint in the covenant to ensure that the covenant imposes only the restraint that is reasonably necessary to protect the legitimate business interest." *Id.*

Here, Plaintiff's customer list is a trade secret, which is recognized as a legitimate business interest. Alternatively, assuming that the customer lists are not protectable trade secrets, they certainly qualify as "[v]aluable confidential business or professional information that otherwise does not qualify as trade secrets." Fla. Stat. § 542.335(1)(b)(2). *See Colucci v. Kar Kare Automotive Group, Inc.*, So.2d 431, 438-39 (Fla. 4th DCA 2006) (finding that customer lists are legitimate business interests). It is also likely that Plaintiff can demonstrate "substantial relationships with specific prospective or existing customer," another legitimate business interest. As displayed throughout Plaintiff's customer list, Pinto engaged in multiple telephonic communications with Plaintiff's customers. Further, as Mr. Fontana testified, Plaintiff had a policy of contacting customers seven (7) times within a period of six (6) months to develop and maintain business relationships with them. Accordingly, Plaintiff can

likely prove the existence of at least one legitimate business interest for purposes of a restrictive covenant.

Restrictive covenants must be "reasonable in time, area, and line of business" in order to be enforceable. *See* Fla. Stat. § 542.335(1). Florida Statutes Section 542.335(1)(d)(1) provides that "a court shall presume reasonable in time any restraint 6 months or less in duration and shall presume unreasonable in time any restraint more than 2 years in duration."

### ii) Confidentiality Provision

In order to prevail on breach of contract claim under Florida law, a plaintiff is required to plead and establish: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). As stated previously, Pinto was bound by the Confidentiality Provision in the Employee Non-Disclosure Agreement, which provides that Pinto may not "use . . . disclose, transfer or reveal, directly or indirectly to any person or entity any Confidential Information without the prior written authorization of the Company." Pursuant to the Employee Non-Disclosure Agreement, Plaintiff's customer lists are characterized as confidential information.

### D. Relevant Cause of Action Against Simply Organic

In Count VIII of its Complaint, Plaintiff alleges that Defendants, including Simply Organic, engaged in willful violation of the Florida Uniform Trade Secrets Act. *See* Fla. Stat. § 688.001 *et seq.* Pursuant to Florida Statutes Section 688.003, "actual or threatened misappropriation" of a trade secret may be enjoined. Misappropriation is defined as:

(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

> 1. Used improper means to acquire knowledge of the trade secret; or
>
> 2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:
>
>> a. Derived from or through a person who had utilized improper means to acquire it;
>>
>> b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>
>> c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
> 3. Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Fla. Stat. § 688.002(2).

Plaintiff also contends that it is entitled to the recovery of reasonable attorney's fees under the Uniform Trade Secrets Act which provides:

> If a claim of misrepresentation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party.

Fla. Stat. § 688.005. At this stage of the litigation, the Court need not address the alleged willful or malicious nature of misappropriation; as such, it is recommended that attorney's fees not be awarded to Plaintiff on this account.

## IV. Discussion

### A. Likelihood of Success on the Merits

A likelihood of success on the merits is generally the most important factor when considering whether to grant a motion for preliminary injunction. *Schiavo v. Schiavo*, 357 F.Supp.2d 1378, 1383 (M.D.Fla. 2005), aff'd, 403 F.3d 1223 (11th Cir.2005) (citing *Gonzalez v. Reno*, No. 00-11424-D, 2000 WL 381901 at *1 (11th Cir. April 19, 2000)). In order to satisfy this element, the movant requires a showing of "only *likely*, rather than *certain*, success." *Home Oil Company, Inc. v. Sam's East, Inc.*, 199 F.Supp.2d 1236, 1249 (M.D.Ala. 2002) (emphasis in original). Further, in cases where the "'balance of the equities weighs heavily in favor of granting the [injunction],' the movant need only show a 'substantial case on the merits.'" *Schiavo v. Schiavo*, 357 F.Supp.2d 1378, 1383 (M.D.Fla. 2005), aff'd, 403 F.3d 1223 (11th Cir.2005) (citing *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.1986)).

As delineated above, Pinto does not deny that he signed the Employee Non-Disclosure Agreement and the Proprietary Information Agreement & Invention Assignment, which define Plaintiff's customer lists as "confidential information," nor does he deny the fact that he provided these lists to Defendants. Further, Scott Mitchell's Affidavit makes clear that Simply Organic utilized the list provided to them by Pinto, as Plaintiff had seeded the customer list with e-mail addresses of non-customers, and Simply Organic's alleged SPAM e-mail was received by these particular non-customers. (Dkt. No. 5 at 4-5.) In addition, in his Affidavit, Scott Mitchell stated that (1) Plaintiff's past customers have contacted Plaintiff complaining about "Simply Organic SPAM" because they determined that Plaintiff must have sold their e-mail addresses and (2) that Plaintiff has lost several customers due to this incident.

14

(Dkt. No. 5 at 5.)  Finally, it is very likely that Simply Organic "knew or had reason to know" that the customer list was acquired through improper means and/or was derived "from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use." *See* Fla. Stat. § 688.003.  The heading of Plaintiff's customer list reads:

International Hair & Beauty Systems, LLC
Customer & Job List

(Dkt. No. 50, Ex. 1.)  This fact alone is enough to carry Plaintiff's burden at this stage. Moreover, assuming the veracity of Plaintiff's Complaint, Simply Organic was aware that Pinto was a former employee of Plaintiff and was bound by Plaintiff's Non-Disclosure Agreement. (Dkt. No 1 at ¶ 69) ("The existence of these agreements, as well as the material terms of these agreements, was disclosed by Pinto to the Simply Organic Defendants.")  As such, the Court finds that it is clear that Plaintiff has demonstrated at least a "substantial case on the merits" with respect to breach of the non-solicitation provision, confidentiality provision, and the Florida Uniform Trade Secrets Act, as is required to meet the first prong in the Eleventh Circuit.  *Schiavo v. Schiavo*, 357 F.Supp.2d 1378, 1383 (M.D.Fla. 2005), aff'd, 403 F.3d 1223 (11th Cir.2005) (citing *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.1986)).  However, Plaintiff has failed to demonstrate a substantial likelihood of success on the merits as to Pinto's alleged breach of the non-compete provision, as the Court finds that there are insufficient facts in the record to determine the reasonableness of this restrictive covenant.[9]

The "Non-Competitive Employment" provision of the Proprietary Information Agreement & Invention Assignment provides the following:

---

[9]Nevertheless, the Court cautions Pinto to be mindful of the existence of this covenant and to conduct himself accordingly.

> At all times during, and for a period of two (2) years after termination of my association with or employment by Organic Salon Systems, I will not, directly or indirectly, render services within any geographic territory for which I was responsible in any sales, advisory, consulting, development or promotional capacity, to any competitor of Organic Salon Systems, in connection with the development, manufacture, marketing, sale, leasing, servicing or promotion of any product in existence or under development which is the same as or similar to or competes with any Organic Salon Systems product, process, system, or service with which I worked during my association with Organic Salon Systems, or about which I have acquired Confidential Information, nor will I engage in any other activities that conflict with my obligations to Organic Salon Systems.

(Dkt. No. 5, Ex. A.) Plaintiff argues that "[b]y cooperating with the Simply Organic Defendants to solicit Plaintiff's customers, which he explicitly agreed not to do in Section 9 ("Non-Competitive Employment) of the Proprietary Information Agreement and Invention Assignment Agreement, Matthew Pinto materially breached the contract." (Dkt. No. 1 at ¶ 131.) However, to be enforceable, a restrictive covenant must be "reasonable in time, area, and line of business." *See* Fla. Stat. § 542.335(1). Here, although the covenant is reasonable in time, it is ambiguous as to the geographic area and line of business restrictions. Preventing Pinto from the ability, directly or indirectly, to "render services within any geographic territory for which [he] was responsible" could virtually limit his ability to perform work in the hair care business in any capacity. Plaintiff has not provided the Court with details regarding the geographic territories for which Pinto was responsible, nor has it defined exactly what type of work the covenant prohibits. Local Rule 4.05(3) provides that a motion for a temporary restraining order should "describe precisely the conduct sought to be enjoined." Here, however, without clear restrictions, both the Court and Pinto are left to guess what exactly the non-compete clause prohibits and/or where such prohibitions should be enforced. As such,

the Court finds that the record is insufficient to determine the reasonableness of the non-compete clause.  Further, and for the very same reasons, any attempt by the Court to reconstruct this restrictive covenant would be a fruitless endeavor.[10]

### B. Irreparable Harm

The Eleventh Circuit has stressed that the threat of irreparable harm is an absolute prerequisite to the issuance of injunctive relief.  *See Northeastern Florida Chapter v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990) (noting that a showing of irreparable harm is "the sine qua non of injunctive relief.").  The Supreme Court has held that "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."  *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974).

In this case, Plaintiff argues that "there is actual loss of Plaintiff's customers and goodwill, and that the potential loss of customers and goodwill in the future is imminent." (Dkt. No. 3 at 13.)  As this Court has held that "the loss of customers and good will is an irreparable injury and is difficult to measure, the Court finds Plaintiff's argument persuasive. *Southeastern Mechanical Services, Inc. v. Brody*, Case No. 8:08-CV-1151-T-30EAJ, No. 8:08-CV-1151-T-30EAJ, 2008 WL 4613046 at *15 (M.D.Fla. Oct. 15, 2008).[11]  Further,

---

[10]The Court notes that Florida Statutes Section 542.335(1)(c) empowers the trial court enforcing a covenant to "modify the restraint in the covenant to ensure that the covenant imposes only the restraint that is reasonably necessary to protect the legitimate business interest." *Walsh v. Paw Trucking, Inc.*, 942 So.2d 446, 448 (Fla. 2d DCA 2006).

[11]In addition, for alleged violations of a covenant not to compete arising under Florida Statutes Section 542.335, upon a showing of a legitimate business interest, as is demonstrated in this case, irreparable harm is presumed. *Continental Group, Inc. v. KW Property Management, LLC*, 622 F.Supp.2d 1357, 1377-78 (S.D.Fla 2009).  The non-moving party bears the burden of rebutting this presumption, which Defendants have failed to do. *Southern Wine and Spirits of America, Inc. v. Simpkins*, No. 10-21136-Civ, 2011 WL 124631, at *8 (S.D. Fla. Jan. 14, 2011).

irreparable harm may be suffered if Simply Organic continues to solicit customers from Plaintiff's customer list, although the Court notes that Simply Organic has explicitly stated that it has no intention of doing so.

### C. Balancing of Hardships

"The harm considered by the [Court] is necessarily confined to what might occur in the interval between ruling on the preliminary and trial on the merits." *United States v. Lambert*, 695 F.2d 536, 540 (11th Cir. 1983). Plaintiff faces irreparable injury in the form of lost customers and goodwill if Defendants are not prohibited from further use and/or distribution of the customer lists. Defendants, on the other hand, have not demonstrated any potential damage that a preliminary injunction may cause. As such, the Court finds that the threatened injury to Plaintiff clearly outweighs the harm that a narrowly-tailored preliminary injunction might cause Defendants. *See Southeastern Mechanical Services, Inc. v. Brody*, Case No. 8:08-CV-1151-T-30EAJ, No. 8:08-CV-1151-T-30EAJ, 2008 WL 4613046 at *16 (M.D.Fla. Oct. 15, 2008).

### D. Public Interest

Last, the Court must look at whether "granting [a] preliminary injunction will disserve the public interest." *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 n. 13 (11th Cir.1985). Here, a preliminary injunction would affirmatively serve the public interest by preserving faith in the contractual agreements that businesses routinely make with their employees, by upholding the terms of enforceable contracts, and by rightfully protecting trade secrets from unlawful use and disclosure.

### V.  **Remedies**

As the Court finds Plaintiff's non-solicitation and confidentiality provisions enforceable, Pinto shall be bound by the terms of these provisions.  Specifically, Pinto may not solicit, either directly or indirectly, any of Plaintiff's customers or distribute Plaintiff's customer list.  Similarly, Simply Organic shall be enjoined from soliciting any of the customers on Plaintiff's customer list; *however*, Simply Organic *may* continue to solicit those customers on the list whom it had solicited prior to the receipt of Plaintiff's list.  Should it want to do so, Simply Organic must demonstrate to the Court, through a separate motion, previous solicitation of these customers.  For the purposes of this Report and Recommendation, solicitation is defined as the contact of customers for the purpose of selling Simply Organic products.

Although the Court finds that, due to insufficient facts in the record, an injunction to enforce the non-compete covenant against Pinto is inappropriate at this time, the Court reminds Pinto to be mindful of its existence when pursuing employment in the hair care industry.

### VI.  **Security**

Pursuant to Federal Rule of Civil Procedure 65(c), "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  A court has sound discretion in setting the amount of the bond. *Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1127 (11th Cir. 1997).  The Court finds that Defendants' request for such security is certainly reasonable and supported by the Federal Rules.

However, Defendants' request for a $2 million bond, without evidence to support such an amount, is unwarranted. Plaintiff did not proffer a suggestion as to the appropriate amount of security to be given in this case. As such, based upon the arguments presented and the facts before the Court, the undersigned recommends a bond amount of $100,000. *See Southeastern Mechanical Services, Inc. v. Brody*, No. 8:08-CV-1151-T-30EAJ, 2008 WL 4613046, at *17 (M.D. Fla. Oct. 15, 2008) (recommending a bond amount of $100,000 in a case involving, *inter alia*, alleged misappropriation of trade secrets and violations of the Computer Fraud and Abuse Act).

## VII.  Conclusion

For the foregoing reasons, it is hereby **RECOMMENDED** that:

1) Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction Against Defendants Matthew Pinto and Simply Organic, Inc. (Dkt. No. 3) be **GRANTED IN PART AND DENIED IN PART**, as stated herein; and

2) Defendants' Motion to Strike Allegations in Scott Mitchell Affidavit (Dkt. No. 33) be **GRANTED**,[12] as the disputed paragraphs in the Affidavit contain hearsay and/or are not based on personal knowledge.

The Court reiterates that all recommended relief in this Report and Recommendation pertains only to the request for preliminary injunctive relief, as the issuance of a TRO would be inappropriate at this time

---

[12]Specifically, the Court recommends that paragraphs 10, 11, 14, 22, 31, and 34 be stricken from Scott Mitchell's Affidavit. (Dkt. No. 5.) Although Defendant's Motion to Strike Allegations requests that paragraph 20 be stricken, it then quotes a portion of paragraph 22 in support of this request. As such, the Court assumes that this is a mere scrivener's error on Defendants' part. The Court notes that, in arriving at the underlying decision, no reliance has been placed on the paragraphs recommended to be stricken.

**IT IS SO REPORTED** at Tampa, Florida on this 26th day of September, 2011.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. James S. Moody, Jr.

Counsel of Record