UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**INTERNATIONAL HAIR & BEAUTY SYSTEMS, LLC, d/b/a ORGANIC SALON SYSTEMS,**

    Plaintiff,

v.                                                 Case No. 8:11-cv-1883-T-30AEP

**SIMPLY ORGANIC, INC.; GINO MARTIGNETTI; GENE MARTIGNETTI; JON MOSTROM; MATTHEW PINTO,**

    Defendants.
_____/

**ORDER**

THIS CAUSE comes before the Court upon Defendant Matthew Pinto's Motion to Dismiss [or] in the Alternative Stay Proceedings and Compel Arbitration and Supporting Memorandum of Law (Dkt. # 86) and Plaintiff's Opposition to Defendant Matthew Pinto's Motion to Compel Arbitration (Dkt. # 93). Pinto has moved the Court to stay this matter and to enforce the arbitration provision contained in the Acknowledgment of and Agreement with Organic Salon Systems Arbitration Policy ("the Arbitration Agreement"). Organic Salon Systems objects to Pinto's motion to compel arbitration primarily on the grounds that the complaint does not raise arbitrable issues and that Pinto waived his right to seek arbitration by actively participating in this matter (Dkt. #93). The Court, having considered the motion,

response, memoranda, exhibit, affidavits, and being otherwise advised in the premises, finds that Pinto's motion should be denied.

## BACKGROUND

Pinto was employed by Organic from October 2008 until his termination in October 2010. (Dkt. #93). On August 25, 2010, Pinto and Organic entered into the Arbitration Agreement. The pertinent language of that policy is as follows:

> If any employment dispute arises while you are employed at organic Salon Systems, you agree to submit any such dispute arising out of your employment or the termination of your employment (including, but not limited to, claims of unlawful termination based on race, sex, age, national origin, disability, breach of contract or any other bias prohibited by law) exclusively to binding arbitration under the federal Arbitration Act, 9 U.S.C., Section 1. Similarly, any disputes arising during your employment involving claims of unlawful discrimination or harassment under federal or state statues shall be submitted exclusively to binding arbitration under the above provisions. This arbitration shall be the exclusive means of resolving any dispute arising out of your employment or termination from employment by Organic Salon Systems or you, and no other action can be brought by employees in any court or forum.
>
> By simply accepting or continuing employment with Organic Salon Systems, you automatically agree that arbitration is the exclusive remedy for all disputes arising out of or related to your employment with Organic Salon Systems and you agree to waive all rights to civil court action regarding your employment and the termination of your employment with Organic Salon Systems; only the arbitrator, and not a judge nor a jury, will decide the dispute.

(Dkt. #86-1). In addition to the Arbitration Agreement, Pinto and Organic signed a Proprietary Information Agreement and Invention Assignment (Dkt. #1-1) and Employee Non-Disclosure Agreement (Dkt. #1-2) on August 25, 2010.

On June 10, 2011, Organic sued defendants Simply Organic, Inc., Gino Martignetti, Gene Martignetti, Jon Monstrom, and Matthew Pinto in this Court. The defendants moved to dismiss the action for lack of jurisdiction, and Organic voluntarily dismissed Case No. 11-1300 without prejudice on August 18, 2011. On August 19, 2011, Organic filed the instant case against the same defendants. On April 16, 2012, Pinto filed this motion to compel arbitration, and, on May 15, 2012, Organic filed a Notice of Partial Settlement (Dkt. #96) with all the defendants except Pinto.

From August 2011 to January 2012, Pinto represented himself *pro se*. During that time, Pinto submitted an affidavit in opposition to the preliminary injunction on September 2, 2011 (Dkt. #32); appeared and testified at the preliminary injunction hearing on September 7, 2011 (Dkt. #38); responded to Organic's first set of interrogatories (Dkt. #93); and objected to Organic's first request to produce documents (Dkt. #93). After an entry of default was entered against Pinto on January 13, 2012 (Dkt. #77), Pinto retained counsel and filed an answer and asserted six affirmative defenses on January 17, 2012 (Dkt. #78). On April 12, 2012, Pinto's deposition was taken in this case. Finally, on April 16, 2012, Pinto requested that the Arbitration Agreement be enforced and filed his Motion to Dismiss [or] in the Alternative Stay Proceedings and Compel Arbitration and Supporting Memorandum of Law (Dkt. # 86).

## Analysis

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement in any contract involving commerce "shall be valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has stated that employment contracts, except for contracts of transportation workers specifically exempted by the FAA, are included within the meaning of a contract involving commerce. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113-14 (2001). Furthermore, the Arbitration Policy specifically states that disputes arising out of Defendant Pinto's employment are to be decided under the FAA. Thus, the FAA governs the application of the Arbitration Agreement to the instant case.

Although arbitration agreements governed by the FAA are to be "addressed with a healthy regard for the federal policy favoring arbitration," *Krinsk v. Suntrust Banks, Inc.*, 654 F.3d 1194, 1200 & n.15 (11th Cir. 2011) (*quoting Ivax Corp. v. B. Braun of Am., Inc.,* 286 F.3d 1309, 1315 (11th Cir. 2002)), the FAA only applies to disputes the parties have agreed to arbitrate, allowing parties to exclude certain terms from the scope of their arbitration agreement. *Volt Info. Sciences, Inc. v. Bd. of Trs. Of the Leland Stanford Junior Univ.*, 498 U.S. 468, 478 (1989). Whether certain terms fall within the scope of the arbitration agreement and the interpretation of terms is a matter of general state-law principles of contract interpretation. *Id.* at 475-76. Under general contract law, "[a]bsent some ambiguity in the arbitration provision, the language of the provision defines the scope of the disputes subject to arbitration." *FusionStorm, Inc. v. Presidio Networked Solutions, Inc.*, – F.Supp. 2d –, 2012 WL 1854277 (M.D. Fla. 2012) (*citing E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002)). Florida law construes arbitration agreements in accordance with the discernable intent of the parties from the language they used in the agreement. *SCG*

*Harbourwood, LLC v. Hanyan*, – So. 3d –, 2012 (Fla. 2d DCA) ("It is the language of the agreement that defines the scope of an arbitration agreement."). Here, the motion to compel arbitration fails because Organic likely never agreed to arbitrate its claims, and, even if the Arbitration Agreement's language could be given such a meaning, Pinto has waived the right arbitrate by extensively participating in this litigation.

Pinto asserts that Organic's claims enumerated in the complaint are disputes governed by the Arbitration Agreement and must be submitted to arbitration. Organic counters that the Arbitration Agreement fails to make the promise to arbitrate binding on itself because the Arbitration Agreement consistently refers to Pinto's obligation to submit disputes (Dkt. #86-A) ("you agree to submit any such dispute . . . exclusively to binding arbitration"; "no other action can be brought by employees in any court or any forum"; "you agree to waive all rights to a civil court action regarding your employment or termination of your employment"). The ambiguous language arises in the clause, "[t]his arbitration shall be the exclusive means of resolving any dispute arising out of your employment or termination from employment *by Organic Salon Systems* or you" (emphasis added). Although "by Organic Salon Systems" grammatically modifies "termination of your employment," not "any dispute," this issue need not be decided because Pinto has waived any right to arbitration by his extensive participation in this litigation.

Even if an arbitration agreement applies, courts will not compel arbitration when the party asserting the right has waived its right to do so. *Krinsk*, 654 F.3d at 1200. Whether a party has waived its contractual right to arbitrate is a two-part test. First, in view of the

totality of the circumstances, the party must not have acted inconsistently with the arbitration right.  Second, the non-moving party must not be prejudiced by an untimely demand.  *Id.* at 1200-01.  Courts evaluate prejudice by considering the length of delay and the expense incurred by the non-moving party during the course of litigation.  *Id.* at 1201.

Pinto has waived his right to arbitrate by his active participation in the litigation and by the prejudice Organic would suffer in light of the eight month delay and accompanying litigation expenses.  From the date the complaint was filed on August 19, 2011, to the date Pinto filed his motion to compel arbitration on April 16, 2012, Pinto filed an answer and affirmative defenses, participated in hearings, submitted an affidavit in opposition to and testified against Organic's motion for a Temporary Restraining Order, objected to document requests, answered interrogatories, and had his deposition taken by Plaintiff.  These actions are inconsistent with an intent to exercise an arbitration right, especially since Pinto was aware of the Arbitration Agreement at least as early as the hearing on September 7, 2011.  (Dkt. #55).  *See, e.g., S & H Contractors, Inc. v. A.J. Taft Coal Co.,* 906 F.2d 1507, 1514 (11th Cir. 1990) (holding that an eight month delay between filing a complaint and demanding arbitration, along with motions opposing discovery and depositions, prejudiced the opposing party and were inconsistent with the right to arbitrate).

Organic has also submitted an Affidavit of Nicholas Taldone in Opposition to Defendant Matthew Pinto's Motion to Compel Arbitration (Dkt. # 95), which totals Organic's attorney fees at $48,111 and costs at over $5,000.  Organic admits that counsel was unable to allocate the attorney fees attributable solely to Pinto given the nature of the action.

However, in Mr. Taldone's affidavit, he estimated attorney fees related to prosecuting Pinto at $16,021. Both the eight month delay in the demand for arbitration and the litigation expenses incurred during those interim months provide sufficient proof of prejudice to Organic if this dispute were arbitrated at this late date.

It is therefore ORDERED AND ADJUDGED that Defendant Matthew Pinto's Motion to Dismiss [or] in the Alternative Stay Proceedings and Compel Arbitration is DENIED.

**DONE** and **ORDERED** in Tampa, Florida on August 24, 2012.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2011\11-cv-1883.mtcompelarb.frm